E-FILED
Friday, 24 August, 2007 02:34:49 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

**AARON D. COX,**
    **Plaintiff,**

    **v.**                              **05-2258**

**PATRICK HARTSHORN AND**
**LYNN GALLOWAY,**
    **Defendants.**

### OPINION

Before the court is the defendants' unopposed summary judgment motion [29].

### Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986).  Disputed facts are material only if they might affect the outcome of the suit.  *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

The plaintiff, Aaron D. Cox alleges in this lawsuit that he was denied proper medical care at the Vermilion County Jail, in violation of his constitutional rights.  Specifically, the plaintiff alleges that he filed a number of medical requests for treatment for a rash on his left foot before he was seen by the jail nurse and that the nurse was negligent in prescribing treatment that did not work for his condition.  The plaintiff brings a claim for money damages pursuant to 42 USC Section 1983 against defendants Patrick Hartshorn, the Vermilion County Sheriff, and Lynn Galloway, the jail nurse.

The defendants argue that they are entitled to summary judgment because there is no evidence that plaintiff's medical need was sufficiently serious or that defendants were deliberately indifferent to that need.  The defendants assert that Galloway provided medical treatment for the rash on plaintiff's foot.  Further, the defendants assert that Hartshorn was not personally involved in plaintiff's medical treatment and plaintiff did not address any medical requests to or ever speak with defendant Hartshorn about his medical issues.  Further, the defendants argue that the plaintiff has not shown that a custom, practice or policy existed that caused his constitutional injury.

## Undisputed Material Facts[1]

1. From October 4, 2005, until April 3, 2006, Plaintiff Aaron Cox was a pretrial detainee in the Vermilion County Jail.  He is currently incarcerated at the Hill Correctional Center (Cox Dep. pp. 5-10), Exhibit A).
2. Patrick Hartshorn is the Vermilion County Sheriff (Hartshorn Aff., para. 1, attached as Exhibit B).
3. Lynn Galloway is a nurse at the Vermilion County Jail (Galloway Aff., para. 1, attached as Exhibit C).
4. The plaintiff noticed that his left foot was inflamed a couple of weeks after coming to the jail.  The plaintiff also noticed itchy, rash-like bumps in a little circle on the inside of his left foot.  The bumps would bleed when the plaintiff scratched his foot.  (Ex. A, Cox Dep., pp. 11, 21-23).
5. The plaintiff filled out an inmate request form on October 17, 2005.  He requested medical attention, but did not indicate on the request the condition for which he required attention.  The plaintiff stuck the request form through his cell door to be picked up by a

---

[1]Defendants' Exhibits are attached to Defendants' Statement of Facts [31].

       wing officer after lockdown.  (*Id.*, pp. 11-15).

6.    A couple of days after submitting the written request, the plaintiff spoke with a correctional officer in the control booth.  This officer told the plaintiff that the nurse's office was crowded and that the nurse was seeing people according to the emergency of their condition.  (*Id.*, pp. 19-21).

7.    On October 22, 2005, the plaintiff filled out a second written request, wherein he asked for medical assistance, and stuck the request form through his cell door to be picked up by a wing officer after lock down.  (*Id.*, pp. 24-25).

8.    On October 24, 2005, the plaintiff verbally asked a sergeant for medical assistance and was told to submit an inmate request form.  The plaintiff did not submit an inmate request form at that time.  (*Id.*, pp. 26-27).

9.    On October 28, 2005, Plaintiff verbally asked for medical assistance from a correctional officer in the control booth and was told to submit an inmate request form.  Plaintiff did not submit an inmate request form at that time.  (*Id.*, pp. 27-28).

10.    On October 31, 2005, Plaintiff filled out a request form as a grievance and complained that he wasn't getting any medical assistance.  Plaintiff does not remember to whom the complaint was addressed.  Plaintiff stuck the complaint through his cell door to be picked up by a wing officer after lockdown.  (*Id.*, pp. 28-29).

11.    On November 3, 2005, Plaintiff submitted a second complaint through his cell door to be picked up by a wing officer after lockdown.  (*Id.*, pp. 31-31).

12.    Defendant Galloway did not receive any of plaintiff's medical request forms.  (*Id.*, p. 32, Ex. C, Galloway Aff., para. 2).

13.    Defendant Hartshorn did not receive any written requests, complaints or grievances from plaintiff.  Further, plaintiff did not speak with defendant Hartshorn about his medical condition prior to filing this lawsuit.  (Ex. A, Cox Dep., pp. 47-48; Ex. B, Hartshorn Aff., para. 2).

14.    On November 9, 2005, Defendant Galloway examined the rash on plaintiff's foot and determined that it may have been caused by a fungus.  Defendant Galloway suggested plaintiff wear shower shoes and provided him with an anti-fungal cream.  Defendant Galloway instructed plaintiff to apply the cream three times a day until it was all used up.  (Ex. A, Cox Dep., pp. 31-34; Ex. C, Galloway Aff., para 3).

15.    The first time Plaintiff applied the antifungal cream the rash flared up.  Plaintiff chose not to use the anti-fungal cream after that first application.  (Ex. A, Cox Dep., p. 34).

16.    From the time plaintiff saw the nurse on November 9, 2005, to his release from the jail on April 3, 2006, plaintiff did not make any other requests for medical treatment.  (Ex. A, Cox dep., pp. 34-36; Ex. C, Galloway Aff., para 3).

17.    Plaintiff filed the instant federal complaint on November 14, 2005.  (Pl.'s Comp.,[1]).  Defendants were served with the complaint in this case on March 8, 2006.  (Ex. C, Galloway Aff., para. 4).

18.    After defendant reviewed the complaint and consulted with counsel, on March 24, 2006, plaintiff was called down to the nurse's office and his foot was examined by Dr. Melvin Ehrhardt, a jail doctor.  Dr. Ehrhardt decribed the rash as scaly pigmented dry lesions and provided Plaintiff with hydrocortisone cream.  Dr. Ehrhardt also prescribed antibiotics for a skin lesion on plaintiff's neck.  (Ex. A, Cox Dep., pp. 36-38, 48; Ex. C, Galloway

Aff., para. 4).

19.    Plaintiff used the hydrocortisone cream for three days but it did not help with the rash on his foot.  (Ex. A, Cox Dep., p. 38).

20.    Plaintiff returned to the nurse's office on March 27, 2006, and told defendant Galloway that the hydrocortisone cream was not helping.  Plaintiff requested an appointment to see the dermatologist before he was to leave the jail the following week.  Before an appointment could be made, plaintiff was released.  (Ex. A, Cox Dep., p. 38; Ex. C, Galloway Aff., para. 5).

21.    When plaintiff left the jail on April 3, 2006, his left foot looked the same as it did when he first noticed the rash in October.  (Ex. A, Cox Dep., p. 39).

22.    After his release from the jail, plaintiff never went to the local emergency room to obtain treatment for his foot because he did not feel the condition was an emergency.  (Ex. A, Cox Dep., pp. 46-47).

23.    After his release from the jail, plaintiff made an appointment to see a dermatologist on May 22, 2006.  Plaintiff was unable to make his dermatologist appointment on May 22, 2006, because he was incarcerated on that date.  (*Id*., pp. 39-, 45-46).

### Discussion and Conclusion

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file and/or affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56C  (West 2006).  The mere existence of factual disputes will not preclude the granting of a motion for summary judgment where the dispute does not involve a material fact*.  Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986).  Material facts are identified by the substantive law involved, and to constitute a "genuine issues," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Id*.  When the evidence is not significantly probative or is merely colorable, summary judgment is proper. *Id*. at 249-50.

Summary judgment is appropriate because the record shows that defendants did not violate plaintiff's constitutional rights.  The Eighth Amendment's protection against cruel and unusual punishment shields an inmate from a prison official's deliberate indifference to a substantial risk of serious injury or medical need.  *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).  This means that prison officials cannot intentionally deny or delay access to medical care.  *Zentmyer v. Kendall Co*., 220 F.3d 805, 810 (7th Cir. 2000).  Although the Eighth Amendment does not apply directly to pretrial detainees like plaintiff, they are nontheless afforded the same standard of protection under the Due Process Clause of the Fourteenth Amendment.  *Id.*

To prevail on a constitutional claim for failure to provide medical care, a pretrial detainee must satisfy both an objective and subjective component.  First, to satisfy the objective element, he must show that the deprivation alleged was a "sufficiently serious" medical need.  *Farmer v.*

*Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).  A serious medical need is one that is "life threatening or poses a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991).  The need must be so obvious that even a lay person would easily recognize that it requires a doctor's attention.  *Chapman*, 241 F.3d at 845.

Second, as to the subjective element, the pretrial detainee must show that the defendant was deliberately indifferent to his medical needs.  *Zentmyer*, 220 F.3d at 810.  This requires a finding of more than mere negligence or even gross negligence.  *Chapman*, 241 F.3d at 845. Deliberate indifference requires a showing that the official either wanted harm to come to plaintiff or must have been completely unconcerned about plaintiff's welfare in the face of substantial medical harm.  *See McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).  "[T]he official must both be aware of facts from which the inference could be ddrawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 u.S. at 837.  This standard creates a "high hurdle" for litigants suing correctional officials.  *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

The plaintiff's medical need was not sufficiently serious.  Initially, summary judgment is appropriate in this case because plaintiff has failed to introduce any evidence that his medical need was sufficiently serious.  *See Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (rejecting the notion that every ache, pain, or discomfort creates an  Eighth Amendment claim). Plaintiff's medical complaint - a foot rash - does not rise to the level of an objectively serious medical need.  *See Sanders v. Allen Co. Jail*, No. 106-CV-302, 2006 WL 2578977, *2 (N.D. Ind. Sept. 6, 2006) (fungal infections on the feet are not sufficiently serious); *Davis v. Lawson*, No. 3:05 CV 128, 2005 WL 2293752, *3 (N.D. Ind., Sept. 19, 2005) (discussing medical needs that are not serious for Eighth Amendment purposes and concluding that athlete's foot is not a serious medical condition).  A fungal foot rash is not so serious that it is life threatening or poses a risk of needless pain or lingering disability.  *See Davis*, 936 F.2d at 972.

Plaintiff himself admits that, after being treated by defendant Galloway on November 8, 2005, he did not submit any further medical requests for treatment of the rash.  Further, plaintiff admits that he did not receive any treatment for the rash after leaving the Vermilion County Jail on April 3, 2006.  (In his deposition, plaintiff testified that he had scheduled an appointment with a dermatologist for May 22, 2006, but was unable to make the appointment because he was once against incarcerated (Defs' Stmt Facts, para. 22).  Since the plaintiff's medical complaint does not amount to a serious medical need, plaintiff fails the first, objective prong of the constitutional analysis.

The defendants were not deliberately indifferent to plaintiff's medical needs.  Even if this court were to conclude that plaintiff did in fact establish an objectively serious medical need, summary judgment must be granted because the undisputed facts do not support an inference that defendants were deliberately indifferent.  Construing plaintiff's claim liberally, as required for pro se plaintiffs, plaintiff may be alleging a constitutional violation against defendants Hartshorn and Galloway in their individual capacities or in their official capacities, as the Vermilion County Sheriff and Vermilion Countyh Jail Nurse, respectively.  Plaintiff's claim fails

5

in either event.

If plaintiff's claim is asserted against defendants in their official capacity, it is essentially a claim against the entity of which they are agents. *Boyce v. Moore*, 314 F.3d 884, 891 (7th Cir. 2002); *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991). Therefore, in order to prevail in an official capacity claim, the plaintiff must show that the county's official policy or custom caused his injury. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). "[W]hen the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary" to establish liability under Section 1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 C. Ct. 2427, 2436 (1985).

Here, plaintiff has failed to establish the existence of a custom or practice that resulted in his being provided with ineffective medical care. Plaintiff has neither articulated a faulty custom or practice nor how such custom or practice deprives inmates of constitutional protections. Further, plaintiff has failed to offer any proof that a custom or practice caused constitutional injuries other than the one alleged in his complaint. This showing is required under *Tuttle* and absent such proof, defendants, in their official capacity, cannot be held liable under Section 1983.

In order to prevail in an individual capacity claim, plaintiff must establish that defendants Hartshorn and Galloway caused the deprivation at issue. *Palmer v. Marion Co*, 327 F.3d 588, 594 (7th Cir. 2003). Plaintiff fails to meet this high hurdle. First, the record is devoid of evidence tending to show deliberate indifference. The record indicates that neither defendant Hartshorn nor defendant Galloway received any of plaintiff's written medical requests and complaints. When defendant Galloway learned of plaintiff's medical needs, she examined the rash on his left foot, suggested he wear shower shoes and provided him with anti-fungal cream. The record also indicates that plaintiff did not, after this initial visit with the nurse, make any further requests for medical attention. Finally, the record indicates that when defendants were made aware, through plaintiff's filing of his federal civil rights complaint, that he was asking for further medical treatment, the plaintiff was examined by Dr. Ehrhardt, the jail doctor, who provided him with hydrocortisone cream.

Second, as to defendant Hartshorn, supervisors cannot be held liable for the actions of others. *Gavin v. Armstrong*, 236 F.3d 896, 899 (7th Cir. 2001). Therefore, defendant Hartshorn can be held liable in his individual capacity only if he knew the injury was serious and condoned or turned a blind eye to the inadequate treatment. *See Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). The record shows that defendant Hartshorn was not directly or personally involved in plaintiff's medical care. It is undisputed that plaintiff did not seek treatment from or otherwise discuss his medical problems with defendant Hartshorn. Further, the record contains no evidence tending to show that defendant knew of plaintiff's medical needs from a secondary source.

Overall, the record contains absolutely no evidence to show that defendant Hartshorn knew of plaintiff's requests for treatment much less ignored them.

Even if defendants had received plaintiff's requests and complaints, the short delay in providing him medical attention is not evidence of defendants' deliberate indifference. It is undisputed that plaintiff did not indicate on his first requests the condition for which he required medical attention. Plaintiff did not specify that his need was immediate nor that it was an emergency. In fact, plaintiff himself did not believe the rash on his foot required immediate care as he waited more than a month after leaving the jail to make an appointment with a doctor. Plaintiff admitted that he did not go to the local emergency room for treatment because his foot condition was not an emergency. It is further undisputed that after his initial treatment by defendant Galloway, plaintiff did not submit any medical requests or complaints to alert the defendants that he sought continued treatment. Defendants took the initiative to examine and further treat the rash on plaintiff's foot after plaintiff filed the instant case.

To prevail on a claim that a delay in medical treatment rose to a constitutional violation, plaintiff must support his claim with "verifying medical evidence" to establish that the delay detrimentally affected him. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). The plaintiff has failed to present even a scintilla of evidence to show that any delay contributed to his injuries. Since plaintiff has failed to produce verifying medical evidence showing that the delay between his request and eventual treatment detrimentally affected him, the short delay simply cannot support a finding of deliberate indifference.

Finally, plaintiff's allegation that the medical treatment he received from defendant Galloway was negligent does not rise to a constitutional violation. Mere negligence or even gross negligence does not constitute deliberate indifference. *See Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). Further, "medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." *Rhoden v. Powers*, No. 04-359-MJR, 2006 WL 1084312, *2 (S.D. Ill. April 24, 2006), *citing Gutierrez v. Peters*, 111 F.3d 1364, 1377 (7th Cir. 1997).

Plaintiff has failed to produce any evidence to support a finding that defendants Hartshorn and Galloway consciously disregarded plaintiff's needs or that defendants caused or participated in a medical deprivation. Further, there is no evidence tending to show that defendants Hartshorn and Galloway adopted a custom and practice of providing ineffective means of treatment. Accordingly, defendants' motion for summary judgment is granted.

**It is therefore ordered:**

1.     **Pursuant to Fed. R. Civ. Pro. Rule 56()c), the defendant's unopposed motion for summary judgment is granted [d/e 29]. The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff. This case is terminated, with the parties to bear their own costs.**
2.     **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does**

choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this  **24**th   day of August 2007.


                        **S/MICHAEL P. MCCUSKEY**
              _____
                        **MICHAEL P. MCCUSKEY**
                    **Chief United States District Judge**